**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JOHN DOE,

                                        Plaintiff,

            v.                                                      No. 10-CV-1534
                                                                       (TJM/CFH)

ANDREW CUOMO, Governor of the State
of New York; SEAN M. BYRNE, Acting
Commissioner; ERIC T. SCHNEIDERMAN
New York State Attorney General,

                                        Defendants.
_____

**APPEARANCES:**                                     **OF COUNSEL:**

JOHN DOE
Plaintiff Pro Se

HON. ERIC T. SCHNEIDERMAN                   CATHY Y. SHEEHAN, ESQ.
Attorney General for the                               Assistant Attorney General
    State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se John Doe ("Doe"), an inmate formerly in the custody of the New York

State Department of Correctional and Community Supervision ("DOCCS"), brings this action

pursuant to 42 U.S.C. § 1983 alleging that defendants, three New York State officials,

violated his constitutional rights under the First and Fourteenth Amendments.  Compl. (Dkt.

_____

            [1]  This matter was referred to the undersigned for Report and Recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

No. 20).  Doe also brings an ex post facto challenge, U.S. CONST., art. I, § 10, cl. 1.  Id. at

30.  Presently pending is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

and Doe's cross-motion for leave to amend his complaint and join Facebook, Inc.

("Facebook"), the social networking website, as a defendant.  Defs.' Mot. (Dkt. No. 19);

Cross-Mot. (Dkt. No. 23-1).  Doe opposes defendants' motion.  Dkt. No. 23-1.  Defendants

replied to Doe's opposition.  Defs.' Resp. (Dkt. No. 25).  For the reasons that follow, it is

ordered that Doe's motion for leave to amend his complaint (Dkt. No. 23) is granted and it is

recommended that defendants' motion (Dkt. No. 19) be denied as moot.


## I.  Background

### A.  Action Under Seal
### and Plaintiff's Use of a Pseudonym

On December 14, 2010, Doe, then an inmate in DOCCS's custody, sought permission

from the Court to file a civil rights action under seal and "proceed pseudonymously."  Dkt.

No. 1 at 1.  In February 2011, Doe notified the Court of his release from custody.  Dkt. Nos.

6 at 1, 8 at 2.  By Decision and Order dated March 24, 2011, the Court continued "the

provisional determination by the Clerk to permit [Doe] to proceed anonymously and through

the use of a pseudonym" pending further order on the merits of Doe's motion to use a

pseudonym.  Dkt. No. 8 at 4, 6.


### B.  Electronic Security and Targeting of
### Online Predators Act of 2008 ("e-STOP")

On January 31, 2008, the New York State Legislature enacted the Electronic Security

and Targeting of Online Predators Act of 2008 ("e-STOP"), which made several

2

amendments to the Sex Offender Registration Act ("SORA").  Compl. ¶¶ 9–16; Protection of

People Who Use Internet Services – Convicted Sex Offenders, ch. 67, 2008 N.Y. Sess.

Law News (McKinney) (codified as amended at N.Y. CORRECT LAW §§ 168-a, 168-b, 168-f,

N.Y. EXEC. LAW § 259-c, N.Y. PENAL LAW § 65.10, N.Y. STATE FIN. LAW § 97-bb (2008))

(hereinafter "Amendments") (Dkt. No. 20 at 36–37).  e-STOP's purpose is to "protect the

public from victimization" by convicted sex offenders, noting that "[t]he danger of recidivism

posed by sex offenders who commit predatory acts against children, and the protection of

the public from these offenders, are of paramount concern and interest to the legislature."

Amendments at 34.  The Legislature finds that

> [p]eople meet, socialize and exchange ideas through online
> services such as social networking websites.  Such websites are
> accessible to minors who may easily be presented with obscene
> or indecent material and be subjected to unlawful sexual
> advances from adults. . . .  Behind a computer screen, convicted
> sex offenders are able to hide their identity while attempting to
> engage children in illicit activity.  Additionally, given the secrecy,
> manipulation and deception that often accompanies sex
> offending behavior, the internet—with its promise of
> anonymity—can provide an opportunity for convicted sex
> offenders on probation or parole to circumvent supervision,
> thereby undermining their treatment and increasing the risk of
> recidivism.

Id. at 34–35.  The findings continue,

> [r]ecent investigations conducted by the attorney general have
> found that tens of thousands of known sex offenders use social
> networking websites popular with children.  Existing law,
> however, does not require sex offenders to provide the division
> of criminal justice services [("DCJS")] certain key internet
> identifiers, notwithstanding that such offenders must disclose
> personal information such as their home address, expected
> place of domicile and driver's license number.

Id. at 35.

The Legislature acknowledged that the restrictions on a sex offender's access to the internet "must be tailored to specifically target the types of offenses committed on the internet while not making it impossible for such offenders to successfully reintegrate back into society." Amendments at 35. These findings led to the attorney general working with various internet entities and service providers to police websites for known predators. Id.

e-STOP specifically amends §§ 168-a(16)–(18), 168-b(1)(a), 168-b(10), and 168-f(4) of the New York Correction Law.[2] Compl. ¶¶ 9–16; Amendments at 36–37. Sections 168-a(16)–(18) define the terms "authorized internet entity," "internet access provider," and "internet identifiers." N.Y. CORRECT. LAW §§ 168-a(16)–(18) (McKinney 2012). Section 168-b(1)(a) enumerates the information that DCJS is required to maintain for each sex offender. Id. § 168-b(1)(a). Section 168-b(10) provides that the DCJS may confidentially release internet identifiers to any authorized internet entity upon that entity's request, submitted with the entity's name, address, telephone number, and its specific legal nature and corporate status. Id. § 168-b(10). The entity may use the information obtained to prescreen or remove a sex offender from its services. Id. Further, the DCJS is charged with promulgating "rules and regulations relating to procedures for the release of information in the registry." Id. Section 168-f(4) requires sex offenders to register with the DCJS no later than ten calendar days after any change of, inter alia, internet accounts and identifiers. Id. § 168-f(4).

---

[2] Doe refers to §§ 168-b(1)(a) and 168-f(4) as the "Registration Statutes" and § 168-b(10) as the "Disclosure Statute." Compl. ¶¶ 18–19. As indicated, e-STOP also amends provisions in the New York Executive Law, Penal Law, and State Finance Law, none of which are not challenged in this action. Amendments at 37–39.

## C. Vagueness and Overbreadth

Doe contends that the e-STOP amendments violate his Fourteenth Amendment due process rights for vagueness, both facially and as-applied to him. Compl. ¶¶ 33–61, 96–124. Doe claims that certain terms contained in the e-STOP amendments are either undefined and/or un-definable.[3] Id. ¶¶ 39–41, 52–54, 57, 103–107. As a result, Doe does not know which information he is required to register, or under what circumstances, in order to avoid violating e-STOP and being prosecuted for committing a felony.[4] Id. Further, Doe alleged that the Disclosure Statute provides no standards as to how or when DCJS will disclose internet identifiers to authorized internet entities; consequently, he will not know when he will be denied access to a particular website. Id. ¶¶ 104, 114, 119.

Doe also contends that the e-STOP amendments are overbroad. Compl. ¶¶ 33–61, 96–124. First, Doe alleged that the vagueness of the statutes, combined with the ubiquitous nature of internet access, means that he must refrain from using any devices with internet access. Id. ¶ 57. Second, Doe explains that the e-STOP amendments are

---

[3] These terms include: "internet accounts" (Compl. ¶ 34); "internet access provider" (id. ¶¶ 35–36); "computer and communications facility" (id. ¶ 35); "telecommunications services" (id. ¶ 36); "belonging to such offender" (id. ¶ 37); "any change" (id. ¶¶ 38, 51); "internet identifiers" (id. ¶¶ 44–49); "electronic mail addresses (id. ¶ 44); "designations" (id. ¶ 45); "chat" (id. ¶ 46); "instant messaging" (id. ¶ 47); "social networking" (Compl. ¶ 48, 98); "other similar internet communication" (id. ¶ 49); "uses" (id. ¶ 50); "authorized internet entity" (id. ¶¶ 97–101); "service over the internet" (id. ¶¶ 97, 100); and "general e-mail services" (id. ¶ 99).

[4] "Any sex offender required to register . . . pursuant to the provisions of this article . . . shall be guilty of a class E felony upon conviction for the first offense, and upon conviction for a second or subsequent offense shall be guilty of a class D felony." N.Y. CORRECT. LAW § 168-t (McKinney 2012).

overbroad because internet users create multiple computer system identifiers ("CSIs")[5] for various legitimate reasons.  Id. ¶¶ 69–70.

### D.  First Amendment

Doe contends that the amendments violate his First Amendment rights.  Compl. ¶¶ 62–82, 83–95.  First, Doe intends to establish a website for issues affecting sex offenders, victims of sexually-motivated crimes, and the supporters of both groups, in a manner that will preserve his anonymity.  Id. ¶ 84.  The website will advocate for the modification or repeal of sex offender-related laws as well as public education on sexually-motivated crimes.  Id. ¶¶ 85–86.  Because the website will contain controversial content, the website will require confidentiality to dispel fears of harassment and retaliation on its users.  Id. ¶¶ 88–89.  Doe alleged that he spoke with sex offenders who intend to obtain one or more CSIs for his website, but due to fear of harassment or retaliation, they would only participate if they are not required to register the CSIs with DCJS.  Id. ¶ 91.

Second, Doe contends that the amendments permanently prohibit him from anonymously or pseudonymously engaging in internet activities.  Compl. ¶ 77.  Third, because the e-STOP amendments fail to take into account how internet technology is constantly changing, he is prohibited from creating, obtaining or using any CSIs unless he registers them with DCJS.  Id. ¶¶ 71, 78.  Fourth, the e-STOP amendments will pressure private entities to conduct general searches of both stored communications and

---

[5]  According to Doe, "[c]omputer system identifiers are usually short character strings that may or may not bear some relationship to the true identity and personal identifying information of the users or be crafted to send a small message themselves when displayed."  Compl. ¶ 66.

interceptions of electronic communications.  Id. ¶ 112.  Lastly, the e-STOP amendments will

greatly restrict Doe's ability to discuss certain political and religious issues with certain

individuals.[6]

### E.  Other Claims[7]

Although styled in less particular terms, Doe made an equal protection claim and an ex

post facto challenge.  First, Doe alleged that his equal protection rights were violated

because the e-STOP amendments target only sex offenders.  Compl. ¶ 121.  Doe contends

that the Legislature could have employed alternative means to reach its objectives.  Id. ¶

122.  Second, Doe alleged that the e-STOP amendments violate both his rights and the

---

[6]  Throughout his complaint, Doe alleged that internet access is indispensable to him in communicating, associating, and exchanging data with:  (1) immediate and extended family members in order to maintain and strengthen those relationships, (Compl. ¶¶ 59(a), 80(a), 116(a)); (2) religious leaders and advisors, and others with the same religious beliefs, in seeking spiritual growth and engaging in religious activities, (id. ¶¶ 59(b), 80(b), 116(b)); and (3) immediate and extended family, friends, business associates, the general public, and government officials for the purpose of debating, exchanging, and advocating opinions on political and social issues, (id. ¶¶ 59(c), 80(c), 116(c)).

Doe also requires internet access to:  (1) investigate and report on current events by disseminating personally-authored articles and investigative reports and discussing his work with family, friends, business associates, the general public, and government officials, (Compl. ¶¶ 59(d), 80(d), 116(d)); (2) circulate electronic petitions to be delivered to government officials, (id. ¶¶ 59(e), 80(e), 116(e)); (3) locate and communicate with similarly-minded individuals and groups, for advancing ideas and discussing grievances, (id. ¶¶ 59(f), 80(f), 116(f)); (4) participate in education and training programs, (id. ¶¶ 59(g), 80(g), 116(g)); (5) seek employment and market products and services offered by businesses he intends to establish, (id. ¶¶ 59(h), 80(h), 116(h)); and (6) anonymously or pseudonymously engage in internet activities, (id. ¶¶ 59(i), 80(i), 116(i)).

[7]  Doe alleged that the e-STOP amendments violate the commerce clause as well as his Fourth Amendment rights against unconstitutional searches and seizures.  Compl. at 30.  However, such claims were mentioned in name only and no facts were provided to support these claims.

rights of others similarly situated to be free from retroactive enhancements in punishment as protected by the Ex Post Facto Clause because the amendments were not in effect at the time he committed his offense.  Id. ¶¶ 127–128.

### F.  Injury and Relief

Doe alleged that the e-STOP amendments will cause him to lose time and financial resources, be subjected to harassment and retaliation, tarnish his personal and professional reputation, and invade his privacy.  Compl. ¶¶ 115, 117.  Doe would be subjected to the e-STOP amendments for at least twenty years.  Id. ¶ 4.  Doe requests that the Court declare the e-STOP amendments unconstitutional.  Id. at 30, 33.  Doe also seeks a temporary restraining order, a preliminary injunction, a permanent injunction prohibiting defendants from enforcing the e-STOP amendments, and the costs of his action.[8]  Id.

### G.  Defendants' Motion to Dismiss and Doe's Cross-Motion

On January 23, 2012, defendants filed a motion to dismiss, arguing that (1) the case is not ripe until Doe is released from custody, (2) the complaint failed to state a claim because it contains solely conclusory and speculative assertions, (3) Doe should not be permitted to proceed anonymously, and (4) the case should be unsealed.  Dkt. No. 19-1.  On May 3,

---

[8]  On March 11, 2011, Doe filed a letter motion requesting the Court to expedite the motion for preliminary injunction.  Dkt. No. 7.  The Court denied the letter motion without prejudice on the ground that Doe has not filed any separate motion requesting the issuance of preliminary injunctive relief.  Dkt. No. 10 at 2.  Doe was granted the right to file a proper motion seeking injunctive relief.  Id. at 3.  The record reflects that Doe has not filed any additional motions seeking preliminary injunctive relief.

2012, Doe filed a notice of cross-motion, a cross-motion, and a proposed amended complaint, seeking (1) leave to file an amended complaint, (2) to join Facebook as a defendant, (3) to be permitted to proceed anonymously in this action, and (4) to not oppose unsealing this action.  Notice of Cross-Mot. (Dkt. No. 23) at 1; Cross-Mot. at 3.

Doe seeks to amend the complaint because he commenced this action prior to his release from incarceration and now desires to assert facts showing how the amendments caused him actual harm.  Cross-Mot. at 4.  Doe requests the amended complaint to, <u>inter alia</u>, remove references of him being incarcerated and include certain allegations against Facebook.  <u>Id.</u>  Doe contends that Facebook is an indispensable defendant to this action because it:  (1) is mentioned in the legislative memorandum in support of e-STOP; (2) worked with New York State to "repeatedly and publicly declare[] that they are partners in jointly enforcing a ban on access [its] website . . . .";[9] and (3) it has crucial evidence against the state defendants that he may obtain through the discovery process.  <u>Id.</u> at 5–6. Defendants do not oppose Doe filing an amended complaint nor do they oppose Doe's concession to unsealing the complaint.  Defs.' Resp. at 5.  However, defendants maintain that Doe should not be permitted to proceed anonymously.  <u>Id.</u>

_____

[9]  Both MySpace and Facebook are mentioned in the legislative memorandum in the following manner, "[certain convicted sex offenders] are prohibited from . . . access[ing] commercial social networking websites . . . . the statutory definition of ["commercial social networking website"] makes clear that sex offenders are precluded from using well-known websites such as MySpace and Facebook."  Dkt. No. 20 at 45. This language is an amendment made to New York Penal Law § 65.10 (4-a), which is not challenged in this action.

## II.  Unsealing the Action

"The common law [presumptive] right of public access to judicial documents is firmly rooted in our nation's history."  Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006) (citation omitted); Gambale v. Deutsche Bank AG, 377 F.3d 133, 140 (2d Cir. 2004) (citing United States v. Amodeo, 44 F.3d 141, 145–46 (2d Cir. 1995) ("Amodeo I")). This presumption engenders "public confidence in the judicial system" and works to diminish incompetence and injustice in the judicial process.  Gambale, 377 F.3d at 140 (citing United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995) ("Amodeo II")). However, Rule 26(c) of the Federal Rules of Civil Procedure authorizes the court "for good cause, [to] issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense . . . ."  FED. R. CIV. P. 26(c).  The party seeking the protective order bears the burden of establishing good cause for the issuance of the order. Gambale, 377 F.3d at 142 (citation omitted).  Here, Doe does not oppose the unsealing of his complaint, nor does he make any effort to rebut the public's presumptive right of access to the judicial documents in this case.  Therefore, this action should be unsealed.  Further, for the reasons outlined infra in Section III, prior to the unsealing of the complaint, the Clerk of the Court shall examine the docket report and associated filings and redact any of plaintiff's personal, identifying information.

Accordingly, defendants' motion on this ground is granted.


## III.  Plaintiff's Use of a Pseudonym

Rule 10(a) of the Federal Rules of Civil Procedure directs that "[t]he title of the complaint must name all the parties . . . ."  FED. R. CIV. P. 10(a).  The statute provides the general rule

that the identification of parties to litigation is "an important dimension of publicness [and t]he People have a right to know who is using their courts." Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 189 (2d Cir. 2008) (citing Doe v. Blue Cross & Blue Shield United, 112 F.3d 869, 872 (7th Cir. 1997) (Posner, J.)). Nevertheless, there are exceptional situations where courts have allowed a litigant to proceed under a pseudonym. Id. (citing inter alia, Smith v. Edwards, 175 F.3d 99, 99 n. 1 (2d Cir. 1999) (holding that the privacy of the plaintiff's child merited the use of pseudonyms for plaintiff and his family)). The test for permitting the use of a pseudonym balances "the plaintiff's interest in anonymity . . . against both the public interest in disclosure and any prejudice to the defendant." Id. The Second Circuit articulated a non-exhaustive list of factors for conducting this balancing test:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice, if any, differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

Id. at 189–90 (internal quotation marks, alterations, and citations omitted).

As an initial matter, Doe contends that "[i]t is . . . presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." SEC v. TheStreet.com, 273 F.3d 222, 230 (2d Cir. 2001). However, there has been no protective order issued in this case. Rather, the Court cautioned that the case was only provisionally sealed and a decision on the merits of Doe's motion to use a pseudonym would be rendered once defendants have responded. Dkt. No. 8 at 4. Thus, this contention has no place in the balancing test.

However, after reviewing the factors, defendants' motion papers, and drawing every reasonable inference in favor of the plaintiff, the Court recommends that Doe should be permitted to proceed anonymously. Defendants argue that the first factor should not favor Doe because Doe claimed that other individuals would make the same claims if they were before the court, rendering the subject matter of the litigation not personal. Defs.' Resp. at 8. However, this litigation involves the disclosure of internet user information that identifies Doe. Such information is sensitive and personal to Doe as shown in his alleged concerns of remaining anonymous in establishing his website. Thus, the first factor favors Doe. Under the second factor, defendants argue that the use of pseudonyms may actually invite publicity and the Court should not credit Doe's litigious tactic in joining Facebook to garner further publicity. Defs.' Resp. at 9. However, while it is Doe's decision to request joinder of Facebook, Doe also alleged that joinder would attract negative media attention and result in retaliatory conduct against him and his family. Cross-Mot. at 10–11. If Doe were named, "his past crimes [will] be highlighted . . . he would also be identified as the person challenging the constitutionality of a statute that was created to protect the public, which could make [Doe and his family] an even bigger target for retaliation." Doe v. City of

12

<u>Indianapolis, Ind.</u>, No. 12-CV-00062-TWP-MJD, 2012 WL 639537, at *2 (S.D. Ind. Feb. 27, 2012).[10]  Therefore, the second factor also lends support for anonymity.

Under the fourth factor, defendants contend that Doe would not be placed at a higher risk of harm because Doe is a convicted sex offender whose personal information and criminal conviction is already made public by the sex offender registry.  Defs.' Resp. at 8.  Further, Doe has not alleged any harm since his release.  <u>Id.</u>  As discussed, disclosure of Doe's identity would expose Doe to a higher risk of harm if it is publicly known that he is a convicted sex offender who has filed a civil rights action challenging statutes relating to the limitations of his internet activities.  <u>Doe v. Tandeske</u>, No. A03-231-CV (JWS), 2003 WL 24085314, at *2 (D. Ala. Dec. 5, 2003) (noting that "the real issue is whether Doe reasonably fears retaliation based upon his challenge of [an Alaska statute requiring convicted sex offenders to provide DNA samples to the Department of Public Safety]").  Therefore, the fourth factor favors Doe.

As for the fifth factor, "where a plaintiff attacks governmental activity, for example a governmental policy or statute, the plaintiff's interest in proceeding anonymously is considered particularly strong."  <u>EW v. New York Blood Ctr.</u>, 213 F.R.D. 108, 111 (E.D.N.Y. Feb. 19, 2003) (citing <u>Roe v. Wade</u>, 410 U.S. 113 1973)).[11]  Doe challenges various statutes in this action, which lends support for maintaining Doe's anonymity.

---

[10]  All unpublished opinions cited to by the Court in this Report-Recommendation are, unless otherwise noted, attached to this Recommendation.

[11]  Further, "[i]n such circumstances [concerning governmental activity,] the plaintiff presumably represents a minority interest (and may be subject to stigmatization), and there is arguably a public interest in a vindication of his rights.  In addition, the government is viewed as having a less significant interest in protecting its reputation from damaging allegations than the ordinary individual defendant."  <u>New York Blood Ctr.</u>, 213 F.R.D. at 111.

Defendants argue that the sixth factor favors revealing Doe's identity because they would be severely prejudiced if the Court permits Doe to press his claims anonymously. Defs.' Resp. at 9. This is because Doe makes an as-applied challenge in his complaint and seeks monetary damages from the defendants; thus, knowing Doe's identity is crucial for preparing their defense. Id. at 9–10. However, at this stage of the litigation, no discovery schedule has yet been set. Further, Doe's identity has, thus far, remained confidential, which places the seventh factor in Doe's favor. Moreover, Doe's identity may be revealed for discovery purposes, subject to a protective order. Therefore, defendants are not prejudiced by Doe's anonymity and both the sixth and seventh factors support anonymity.

As for the eighth and ninth factors, Doe challenges the constitutionality of statutory law, not his conviction or placement in the sex offenders registry. Because of the purely legal nature of the claims presented, there is weak public interest in learning Doe's identity and the public's interest in this litigation would not be furthered by disclosing Doe's identity. See, e.g., City of Indianapolis, Ind., 2012 WL 639537, at *3 (concluding, in a case involving a challenge to Indiana regulation restricting sex offenders from the use of social networking websites, that "the public interest is muted by the fact that Plaintiff is challenging a pure issue of law and he represents a larger class."); Fross v. Cnty. of Allegheny, No. 08-1405, 2008 WL 4610290, at * 2 (W.D. Pa. Oct. 16, 2008) ("This case raises constitutional challenges to a County ordinance . . . The[] individual names [of the anonymous plaintiffs who were registered sex offenders] will not effect the legal issues raised in the case."); Tandeske, 2003 WL 24085314, at *2 (allowing the plaintiff, a convicted sex offender, to proceed anonymously after finding that "[t]he subject matter is not an action by Doe, but rather the constitutionality of a statute. Doe's status is of significance, but his identity is not

of significance to the case.").  Lastly, to the extent that the third and tenth factors contribute

to this analysis, there is no other severe harm that would result from disclosing Doe's

identity and no alternative mechanism is available to protect Doe's confidentiality.

Accordingly, defendants' motion on this ground is denied.


## IV.  Cross-Motion

### A.  Leave to Amend the Complaint

The Federal Rules of Civil Procedure provide that a party may amend his pleading either

"with the opposing party's written consent or the court's leave."  FED. R. CIV. P. 15(c).  A

court is to "freely grant" leave to amend a complaint unless the request was made in bad

faith or with undue delay, leave would unfairly prejudice the opposing party, or the proposed

amendment is futile.  Foman v. Davis, 371 U.S. 178, 182 (1962).  Futility is established

when an amendment "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P.

12(b)(6) . . . [namely] a challenge to the sufficiency of the pleading . . . or . . . the legal

cognizability of the claim."  Rusyniak v. Gensini, 629 F. Supp. 2d 203, 217 (N.D.N.Y. 2009)

(internal quotation marks and citations omitted).  "[W]hile futility is a valid reason for denying

a motion to amend, this is true only where it is beyond doubt that the plaintiff can prove no

set of facts in support of his amended claims."  Pangburn v. Culbertson, 200 F.3d 65,

70–71 (2d Cir. 1999) (internal quotation marks and citations omitted).  Further, "a pro se

complaint is to be read liberally[] and should not [be] dismiss[ed] without granting leave to

amend at least once when a liberal reading of the complaint gives any indication that a valid

claim might be stated."  Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009)

(internal quotation marks omitted) (citing Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794,

795 (2d Cir. 1999) (per curiam)); see also Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); Branum v. Clark, 927 F.3d 698, 705 (2d Cir. 1991).

Defendants indicated in their response to Doe that they do not oppose Doe's request to file an amended complaint.  Based upon the Court's review of the file, and in light of the fact that defendants are not opposed to the requested relief, plaintiff's motion to amend is granted except with respect to the addition of Facebook as a defendant, as outlined below. The Clerk is directed to send a copy of the proposed amended complaint to Doe to be signed and returned to the Clerk for filing in this action as the amended complaint.[12]


### B.  New Defendant & State Action

In the case of proposed amendments where new defendants are to be added, the Court must also look to FED. R. CIV. P. 21.  It states, in pertinent part, that a party may be added to an action "at any time, on just terms."  FED. R. CIV. P. 21.  Rule 21 is "intended to permit the bringing in of a person, who through inadvertence, mistake or for some other reason, had not been made a party and whose presence as a party is later found necessary or desirable."  United States v. Commercial Bank of N. Am., 31 F.R.D. 133, 135 (S.D.N.Y. 1962) (internal quotations marks and citation omitted).  Addition of parties under Rule 21 is also guided by the same liberal standard as a motion to amend under Rule 15.  Fair Housing Dev. Fund Corp. v. Burke, 55 F.R.D. 414, 419 (E.D.N.Y. 1972) (citation omitted).

Doe seeks to add Facebook as a defendant in his amended complaint.  Section 1983 of

---

[12]  An unsigned copy of the amended complaint was provided.  See Dkt. No. 23-2 at 6-33.  The Clerk of the Court shall, consistent with the previous orders of the undersigned, insure that upon receipt of the signed amended complaint, any personal, identifying information is redacted prior to its filing and service.

Title 42 of the United State Code provides that,

> [e]very person who, <u>under color of any statue, ordinance,</u>
> <u>regulation, custom, or usage, of any State</u> . . . subjects, or
> causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

<u>Id.</u> (emphasis added). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." <u>Flagg v. Yonkers Sav. & Loan Ass'n</u>, 396 F.3d 178, 186 (2d Cir. 2005) (citing <u>United States v. Int'l. Bhd. of Teamsters</u>, 941 F.2d 1292, 1295 (2d Cir. 1991)) (internal quotation marks omitted). To successfully state a claim under § 1983, a plaintiff must show state action, which entails allegations of injury caused by a state actor or a private party acting under color of state law. <u>Fabrikant v. French</u>, 691 F.3d 193, 206 (2d Cir. 2012); <u>Ciambriello v. Cnty. of Nassau</u>, 292 F.3d 307, 323 (2d Cir. 2002) (citing <u>Spear v. Town of West Hartford</u>, 954 F.2d 63, 68 (2d Cir. 1992)).

In determining whether a private actor acts under color of state law, the Court must first identify "the specific conduct of which the plaintiff complains." <u>Am. Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 51 (1999). A private entity becomes a state actor when there is "such a close nexus between the state and the challenged action that the state is <u>responsible</u> for the specific conduct . . . . " <u>Fabrikant</u>, 691 F.3d at 207 (citing <u>Cranley v. Nat'l Life Ins. Co. of Vt.</u>, 318 F.3d 105, 111 (2d Cir. 2003)) (internal quotation marks and alterations omitted); <u>see</u> <u>also</u> <u>Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n</u>, 531 U.S. 288, 295 (2001) ("state action may be found if . . . seemingly private behavior may be

17

fairly treated as that of the State itself") (internal quotation marks and citations omitted).

While there is "no single test [used] to identify state actions and state actors[,] . . . there are

a host of facts that can bear on the fairness of an attribution of a challenged action to the

State." Cooper v. U.S. Postal Servs., 577 F.3d 479, 491 (2d Cir. 2009) (internal quotation

marks and citation omitted); Brentwood Acad., 531 U.S. at 295 ("[N]o one fact can function

as a necessary condition across the board for finding state action.") (citations omitted).  The

common denominator of these factors turns on whether the challenged actions are "fairly

attributable" to the state.  Rendell-Baker v. Kohn, 457 U.S. 830, 840 (1982) (citing Lugar v.

Edmonson Oil Co., 457 U.S. 922, 937 (1982)); Tancredi v. Metropolitan Life Ins. Co., 316

F.3d 308, 312 (2d Cir. 2003) (citing Am. Mfrs. Mut., 526 U.S. at 51).

The Court employs three tests to determine whether private actions are attributable to

the state:

> (1) [when] the entity acts pursuant to the coercive power of the
> state or is controlled by the state ("the compulsion test"); (2)
> when the state provides significant encouragement to the entity,
> the entity is a willful participant in joint activity with the state, or
> the entity's functions are entwined with state policies ("the joint
> action test" or "close nexus test"); or (3) when the entity "has
> been delegated a public function by the state," ("the public
> function test").

Sybalski v. Indep. Grp. Home Living Program Inc., 546 F.3d 255, 257 (2d Cir. 2008)) (citing

Brentwood Acad., 531 U.S. at 296) (internal quotation marks and alterations omitted).

In this case, Doe has failed to establish that Facebook has acted under color of state

law for the purposes of joining Facebook as a defendant.  Doe argues that Facebook has

acted under color of state law; however, he has failed to specifically articulate how and

under which test.  Given a liberal reading of the amended complaint, it appears Doe asserts

Facebook's involvement is state action pursuant to the joint action test. Doe alleged that Facebook acts jointly with the New York State to monitor the internet activities of convicted sex offenders and restrict or ban certain convicted sex offenders from using Facebook. Am. Compl. (Dkt. No. 23-2 at 6-33) ¶¶ 92–99.

However, as noted in <u>Sybalski</u>, the state's <u>procedures</u> for limiting activity in a particular area is distinct from a private actor's <u>decision</u> as to whether to impose such limitations. 546 F.3d at 259 (discussing the distinction as recognized in <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1006–07 (1982)). Where private actors retain the independent ability and power to choose whether and how to impose such limitations, irrespective of state procedures, no state action has occurred. <u>Id.</u> Here, while DCJS promulgates the procedures for disclosing internet identifiers, whether Doe's internet identifiers are actually disclosed to Facebook depends on Facebook's decision to make such a request to the DCJS. Therefore, based on the alleged facts and contemplation pursuant to the joint action test, even liberally construing Doe's pleadings, he has failed to establish the state's involvement in Facebook's decision to either restrict or ban Doe from accessing Facebook's services is sufficient to render that decision state action. As Doe has failed to allege state action, his Section 1983 claim would be uncognizable, and thus amendment to include Facebook as a defendant would be futile. Accordingly pursuant to the liberal standard utilized when evaluating amended complaints, Doe is precluded from naming Facebook a defendant in this action.

Accordingly, Doe's cross-motion on this ground is denied.


### V.  Motion to Dismiss

An amended complaint supercedes the original complaint, rendering it legally powerless.

Int'l. Controls Corp. v. Vesco, 556 F.2d 665, 668–69 (2d Cir. 1977) (citing inter alia, Washer v. Bullitt Cnty., 110 U.S. 558, 562 (1884)). "Typically, the filing of an amended complaint following the filing of a motion to dismiss the initial complaint moots the motion to dismiss." Byng v. Campbell, No. 07-CV-471 (GLS/DRH), 2009 WL 152708, at *1 (N.D.N.Y. Jan. 21, 2009) (quotations marks and citations omitted). As defendants did not oppose Doe's amended complaint and that motion has been granted, as well as the fact that the defendants' motion to dismiss addressed solely Doe's original complaint, it is recommended that defendants' motion to dismiss (Dkt. No. 19) be denied as moot.

## VI. Conclusion

For the reasons stated above, it is hereby:

1) **ORDERED** that Doe's motion to amend his complaint (Dkt. No. 23) be

   A. **DENIED** as to the addition of Facebook as a defendant; and

   B. **GRANTED** in all other respects; and it is further,

2) **ORDERED** that the Clerk of the Court send a copy of the proposed amended complaint (Dkt. No. 23-2 at 6–33) to plaintiff to be signed and returned to the Clerk for filing in this action; and it is further,

3) **ORDERED** that plaintiff is directed to submit a signed copy of his proposed amended complaint to the Clerk for filing **within ten (10) days** of the filing date of this Report-Recommendation and Order; and it is further

4) **ORDERED** that the action be unsealed, yet Doe be allowed the continued use of a pseudonym. It is also **ORDERED** that the Clerk's Office, upon receipt of the signed amended complaint and prior to the unsealing of the case make necessary

redactions to the docket and associated filings of any information identifying the plaintiff; and it is further

5) **RECOMMENDED** that upon the filing of plaintiff's signed amended complaint, defendants motion to dismiss the complaint (Dkt. No. 19) be **DENIED AS MOOT**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); see also 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72, 6(a), 6(e).

Dated: February 22, 2013
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge